```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF TEXAS
                       HOUSTON DIVISION


THE RICE COMPANY (SUISSE)          §
S.A.,                              §
                                   §
     Plaintiff,                    §
                                   §
v.                                 §
                                   §    CIVIL ACTION NO. H-06-0588
M/V NALINEE NAREE, her             §
engines, boilers and tackle,       §
IBN AGROTRADING GMBH; and          §
PRECIOUS FLOWERS LIMITED,          §
                                   §
     Defendants.                   §
```

MEMORANDUM AND ORDER

Pending is Plaintiff The Rice Company (Suisse)'s Motion to Compel Arbitration (Document No. 15). After carefully considering the motion, response, reply, sur-response, sur-reply, and the applicable law, the Court concludes that the motion should be denied for the reasons that follow.

I.  Background

Plaintiff The Rice Company (Suisse)("Plaintiff") sustained damage to its bagged rice during its transport aboard the M/V Nalinee Naree. At the time, the ship was under a voyage charter to The Rice Company Roseville California ("RCRC") from IBN Agrotrading GMBH ("IBN"), who had time chartered it from its owner, Defendant Precious Flowers Limited ("Defendant"). Document No. 17 at 2. On

September 17, 2005, Plaintiff's cargo was being loaded onto the vessel at the port in Lake Charles, Louisiana, when the approach of Hurricane Rita prompted authorities to order it out of port. Document No. 15 at 1; Document No. 17 at 3.  At that point, only 1,752 out of a total of 5,250 metric tons of rice had been loaded. Document No. 15 at 1.  Upon the ship's return, it was discovered that the rice had been damaged by sea water, the cause of which Plaintiff attributes to the poor condition of the hatch covers. Id.  Plaintiff now moves to compel Defendant to arbitrate the dispute on the grounds that: (1) the authority granted by Defendant to its master and charterers to sign bills of lading on its behalf binds Defendant to arbitrate under the clause that the bill expressly incorporates; and (2) the vessel is bound to the bill of lading, which in turn binds Defendant to the arbitration provision. Document Nos. 15 at 3-4; 19 at 1-3.

## II.  Standard of Review

Under the Federal Arbitration Act ("FAA"), "[a] two-step inquiry governs whether parties should be compelled to arbitrate a dispute.  'First, the court must determine whether the parties agreed to arbitrate the dispute.  Once the court finds that the parties agreed to arbitrate, it must consider whether any federal statute or policy renders the claims non-arbitrable.'" Banc One Acceptance Corp. v. Hill, 367 F.3d 426, 429 (5th Cir. 2004)

(quoting R.M. Perez & Assoc., Inc. v. Welch, 960 F.2d 534, 538 (5th Cir. 1992)). "In order to be subject to arbitral jurisdiction, a party must generally be a signatory to a contract containing an arbitration clause." Bridas S.A.P.I.C. v. Govt. of Turkmenistan, 345 F.3d 347, 353 (5th Cir. 2003). Although a strong federal policy favors arbitration, the policy does not apply to the initial question of whether there is a valid agreement to arbitrate. See Banc One Acceptance Corp., 367 F.3d at 429.

### III.  Discussion

Plaintiff contends that Defendant is bound to arbitrate under a clause contained in the voyage charter party between IBN and RCRC, which was incorporated in the bill of lading.[1] Document Nos. 19 at 2-3; 22 at 1-3. It is undisputed that the bill of lading expressly incorporates the arbitration provision. See Document No. 15 ex. 1 at 19. However, "proving that an arbitration clause is incorporated into a bill of lading to which a nonsignatory is connected is not the only prerequisite for binding that party to submit its disputes to arbitration. The language of

---

[1] When, as here, no bill of lading actually issued, "the terms of a bill of lading that would have been issued, but did not because the cargo was damaged before the bill of lading could issue can nonetheless bind the parties." Interflow (Tank Container Sys.) Ltd. v. Burlington N. Santa Fe Ry. Co., No. Civ. A. H-04-2871, 2005 WL 3234360, at *5 (S.D. Tex. Nov. 29, 2005)(citing Luckenback S.S. Co. v. Am. Mills Co., 24 F.2d 704 (5th Cir. 1928)).

the clause must be broad enough to allow nonsignatories' disputes to be brought within its terms." Continental U.K. Ltd. v. Anagel Confidence Compania Naviera, S.A., 658 F. Supp. 809, 814 (S.D.N.Y. 1987). A clause encompassing "any" or "all" disputes arising out of the charter party "binds not only the original parties, but also all those who subsequently consent to be bound by its terms." Lowry & Co. v. S.S. Le Moyne D'Iberville, 253 F. Supp. 396, 398 (S.D.N.Y. 1966). In contrast, a provision requiring arbitration of disputes between "owners" and "charterers" is generally enforceable only against the parties to the agreement. *See* Alucentro Div. Dell'Alusuisse Italia S.P.A. v. M/V Hafnia, 785 F. Supp. 155, 156 (M.D. Fla. 1991); Continental U.K. Ltd., 658 F. Supp. at 814 ("[W]here the restrictive 'owner/charterer' language is used in the arbitration clause, 'it is indeed difficult to bind to that clause one who is not a signatory to the charter party.'" (quoting Lowry & Co. v. S.S. Nadir, 223 F. Supp. 871, 873-74 (S.D.N.Y. 1963))). In this case there is no contract or arbitration clause to which both Plaintiff and Defendant are signatories.

Indeed, the arbitration clause upon which Plaintiff relies is contained in the voyage charter party and subjects to arbitration in New York "any dispute aris[ing] between Owners and Charterers . . . ." Document No. 15 ex. 1 at 8 ¶ 8. "Owners" are identified in the voyage charter party as consisting only of IBN, the "Time-charter/Disponent-Owners," and the "Charterers" are

4

identified only as RCRC. Id. at 5. Thus, the only "Owner" identified and bound by the arbitration clause of the Voyage Charter Party is IBN. Defendant is not named or identified as an "Owner" in this agreement. *See* Nissho Iwai Corp. v. M/V Thalia, Civ. A. No. 95-2100, 1996 WL 31894, at *4 (E.D. La. Jan. 24, 1996) (scrutinizing the charter party and concluding the entity identified as "owner" was not the shipowner, against whom the arbitration clause could not be enforced, but rather the time charterer/disponent owner who was privy to the agreement). Contrary to Plaintiff's assertions, Defendant's alleged authorization of the bill of lading does not establish a singular identity or alter ego between Defendant and IBN such that Defendant can be construed as the "owner" within the meaning of an arbitration clause included in a voyage charter party that identifies and names *only* IBM as the "owner." *Compare* Continental U.K. Ltd., 658 F. Supp. at 815 (finding the respondent shipowner's authorization of bills of lading sufficient to connect it to the subcharter, but not enough to construe it as an "owner" subject to a similarly worded arbitration clause) *with* Import Export Steel Corp. v. Miss. Valley Barge Line Co., 351 F.2d 503, 506 (2d Cir. 1965) (allowing a bill of lading holder to compel a party to arbitration when such party had "assumed all the obligations and privileges" of a party privy to the subcharter, which included the arbitration clause); Chilean Nitrate Sales Corp. v. The Nortuna, 128 F. Supp. 938, 940-41

(S.D.N.Y. 1955)(relying on alter-ego theory to bind a non-signatory to arbitration). In sum, even though Defendant in the Time Charter authorized bills of lading to be issued by its time charterer or, more remotely, the voyage charterer, the restrictive language of the arbitration clause itself in the voyage charter, and incorporated in the bill of lading, bound *only* IBM as "owner," and not the Defendant owner of the vessel.

Plaintiff argues in the alternative that the Defendant, "as claimant of the vessel *in rem* . . . , must arbitrate" because the *vessel* is bound to the provisions within the bill of lading. Document No. 19 at 2. *See also* Document No. 22 at 1-2. In general, "[w]hen cargo has been stowed on board the vessel and bills of lading are issued, the bills of lading become binding contracts on the vessel *in rem* upon the sailing of the vessel with the cargo[,]" Lykes Lines Ltd. v. M/V BBC Sealand, 398 F.3d 319, 325 (5th Cir. 2005)(internal quotations omitted), and the court's jurisdiction *in rem* over the vessel is independent of its *in personam* jurisdiction over the vessel's owner. *See* Cactus Pipe & Supply Co v. M/V Montmartre, 756 F.2d 1103, 1113 (5th Cir. 1985); see *also* Document No. 19 at 2-3 (citing these propositions).

Nonetheless, the unquestioned presence of *in rem* jurisdiction over the vessel does not resolve whether an arbitration clause agreed to by a Disponent-Owner and sub-charterer, and incorporated within a bill of lading, may be enforced vicariously by the holder

6

against the non-signatory vessel owner through its vessel.  "The *in rem* liability of the ship is a legal fiction, nurtured by courts to protect those having claims against elusive ship owners.  A claimant who succeeds in attaching the vessel against which the claim is directed is relieved of the need to circle the globe in efforts to sue and collect from the owner."  Cargill B.V. v. S/S Ocean Traveller, 726 F. Supp. 56, 61 (S.D.N.Y. 1989).  *See also* Thyssen, Inc. v. Calypso Shipping Corp., S.A., 310 F.3d 102, 107 (2nd Cir. 2002) ("The *in rem* claim serves as a way of making sure that a plaintiff can recover if it wins in arbitration.").  In Cargill, the holder of the bill of lading sought to avoid arbitration of an *in rem* claim against the vessel, although it was contractually bound to arbitrate with the defendant carrier, by arguing that it had no arbitration agreement with the vessel itself.  Cargill, 726 F. Supp. at 61.  The court rejected this argument as a "distort[ion] of fundamental contract rights."  Id. The dispute was essentially between the holder and the shipowner and, because the holder had expressly bound itself to arbitration with the shipowner, it could not rely on the legal fiction to avoid arbitration of its *in rem* claim against the ship.

This case presents the opposite scenario, in which Plaintiff attempts to compel Defendant, which is *not* a signatory to any arbitration agreement with Plaintiff, to arbitration by invoking the legal fiction of the vessel's *in rem* liability.  Because the

7

arbitration clause does not bind the vessel's owner, but only its Time Charter-Disponent-Owner, the *vessel* cannot be construed as an "owner" or "charterer" against whom the clause may be enforced. Moreover, allowing Plaintiff to utilize an *in rem* claim to bootstrap the enforcement of an arbitration clause against a non-signatory Defendant, who never entered or adopted a valid agreement to arbitrate, is no less a "distort[ion] of fundamental contract rights" than the converse circumstance addressed in Cargill.[2]

Accordingly, because Defendant did not agree to arbitrate, and because the voyage charter's arbitration clause that was incorporated in the bill of lading narrowly defined "owners" so as to exclude Defendant from being bound to arbitrate, Plaintiff's motion to compel arbitration must be denied.

---

[2] Plaintiff argues that Defendant should be estopped from denying the enforceability of the arbitration clause because its vessel "benefits from the defenses offered from the bills of lading." Document No. 22 at 4 (citing Hellenic Inv. Fund v. Det Norske Veritas, 464 F.3d 514 (5th Cir. 2006)). "Direct-benefit estoppel 'involve[s] non-signatories who, during the life of the contract, have embraced the contract despite their non-signatory status but then, during litigation, attempt to repudiate the arbitration clause in the contract.'" Hellenic Inv. Fund, 464 F.3d at 517-18 (quoting E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S., 269 F.3d 187, 200 (3d Cir. 2001)). However, Plaintiff's estoppel argument fails because it is not shown that Defendant availed itself to the benefits of the contract *before* the onset of litigation.

IV. <u>Order</u>

It is therefore ORDERED that Plaintiff the Rice Company's Motion to Compel Arbitration (Document No. 15) is DENIED.

The Clerk will enter this Order, providing a correct copy to all counsel of record.

SIGNED in Houston, Texas, this <u> 3rd </u> day of January, 2007.

---

EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE